**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION AT LEXINGTON
CIVIL ACTION NO. 5:14-CV-394-JMH**

ANTHONY WALES, SR., and
TONYA WALES, individually and as
Parents and Guardians of
A.W., JR. an unmarried infant, et al                    **PLAINTIFFS**

**vs.**

**FARMERS STOCKYARDS, INC.**
A Kentucky Corporation, et al    **DEFENDANT/THIRD PARTY PLAINTIFFS**

**PLAINTIFFS' RESPONSE TO MOTION FOR SUMMARY JUDGMENT
OF FARMERS STOCKYARDS, INC. AND ABNER CONSTRUCTION COMPANY**

**FACTS**

Anthony Wales, Sr., Tonya Wales and Anthony Wales, Jr. (hereinafter "A.J.") went to

the Farmer's Stockyard Inc. facility in Flemingsburg, Kentucky on October 12, 2013 to purchase

livestock (RE 108-1 Page ID# 1153). Farmer's Stockyard Inc. is solely owned by Eldon Ginn

(RE 117-1 Page ID# 1955) Within the Farmer's Stockyard Inc. facility there is a bidding area

with seating, restaurant, and livestock pen facility all of which are open to the public.  Within the

livestock pen facility is an elevated walkway approximately 10'6" feet above the floor which is

also commonly referred to as a "catwalk". (RE 107-1 Page ID# 1027)  This walkway was

specifically built for customers to view the livestock located in pens below. (RE 117-1 Page ID#

1974) It is from this elevated walkway that A.J. fell on October 12, 2013 sustaining a fractured

skull. Employees of the stockyard did not see him fall, however, they heard him hit the ground.

(RE 117-1 Page ID# 1944)  On October 12, 2013 A.J. was age six (6) years and eight (8) months.

(RE 98-5 Page ID# 934)

In 1997 Farmers Stockyards was totally refurbished. A new bidding area and restaurant

1

were constructed and the livestock pen area was torn down and replaced. At that time the elevated walkway was constructed. (RE 118-2 Page ID# 2146-49)  Children were permitted on the walkway. (RE 117-1 Page ID# 1974) Because Farmer's Stockyards had Saturday sales Ginn recognized that more children would be at the Stockyards than if he had a sale during the week. (RE 117-1 Page ID# 1975)  Ginn did not tell Todd Barhorst of Abner Construction who built the addition and walkway that children would be on the elevated walkway. (RE 117-1 Page ID# 1974)

The plans for the addition, restaurant and bidding areas were drawn by John Kingston Architects. (RE 115-14 Page ID# 1739) Those plans were submitted to the Kentucky Department of Building and Housing for review of whether they complied with the 1994 state building code. (RE 115-1 Page ID# 1751-52) Those plans were found and are a part of the record.  (RE 107 Page ID# 1101-20) Kingston did not draw plans for the elevated walkway for state review. (RE 115-1 Page ID# 1751, 1787) No plans have ever been found for the elevated walkway. Todd Barhorst, of Abner Construction was uncertain, even if plans for the walkway were drawn, if they had been sent to the state for review. (RE 118-1 Page ID# 2124)  Both Wayne Meyer, the Plaintiff's expert witness and Herbert Goff, the Defendant's expert witness testified that the plans for the elevated walkway should have been submitted for state review. (RE 107-1 Page ID# 1067 and RE 116-2 Page ID# 1879)

The dimensions of the railing on the walkway at the time of the fall of the child are not in dispute. There were horizontal rails with the first being 16" from the floor of the walkway and the second and third being 10" above the other (RE 81-1 Page ID# 860) (Exhibit 1, RE 117-2 Page ID# 2056, 2062, 2064) The floor of the walkway was 10'6" from the concrete floor where the cattle were located (RE 107-1 Page ID# 1027) The child fell through the bars of the

2

guardrails which surrounded the elevated walkway. (RE 109-1 Page ID# 1225)

Abner Construction Company built the Bluegrass Stockyards in Maysville but couldn't recall if it was before or after building Farmers Stockyards. (RE 118 Page ID# 2087) Bluegrass Stockyards in Maysville was built in 1994. (Exhibit 5) That facility also has an elevated walkway for customers to view livestock. However, that elevated walkway protected the public, including children, with guards that were constructed so that no one could fall through. (Exhibit 2, RE 116-3 Page ID# 1923)  Mr. Ginn estimated that he had been in the Maysville Stockyard facilities in 2005. (RE 117 Page ID# 1952) He observed their elevated walkway at that facility (RE 117-1 Page ID# 1967) The Bluegrass Stockyards in Richmond were built in 1998 and the Bluegrass Stockyards in Mt. Sterling were built in 1983. (Exhibit 6) They too had a guardrail system designed so that children could not fall through. (Exhibit 3, RE 116-3 Page ID# 1924-25).

During his deposition Anthony Wales, Sr. described the events leading up to his son's fall:

> A: "We stopped right there to look at that little Charolais heifer, and A.J.'s shoes were untied, so I told him to tie his shoes.
> Q: And if you can, in your own words, kind of tell me what happened.
> A: We -- we knew that his shoes were untied so I told him to get in the corner, because there was people walking by, to get right there in the corner and tie his shoes, and then I took the baby from Mallory, because she had been toting him for 15 min., and we was talking about the, and the next thing I know he hollers, "Daddy," and he's gone." (RE 108-1 Page ID# 1165)

Immediately following the child's fall from the catwalk, Mr. Wales described arriving to his son on the floor of the stockyard.

> Q: "when you got to your son was he conscious?"
> A: "No sir, he was not, not at the immediate second, no."
> Q:  "How long after you got down there was it before your son kind of came to, so to speak?"
> A: "a couple of minutes. It felt like -- it felt like forever. I don't know."
> Q: "Could you tell at that point, when your son -- when you went down there, obviously, as you said, your son was unconscious. Was he breathing at that point?"

3

A: "He was breathing."
Q: "At any point before the ambulance got there, did your son say anything to you?"
A: "Yes he did."
Q: "and what the he tell you?"
A: "he said he couldn't feel his legs and he couldn't move, and all he could move was his upper body and that's why I held his shoulders down where he couldn't do move."
Q: "you remember him saying anything else?"
A: "no, sir, I don't, just that he wanted to go home." (RE 108-1 Page ID# 1169-70)

After being transported to the Fleming County Hospital the Wales were given the initial diagnosis regarding their son which included bleeding on his brain, a skull fracture, and that he still couldn't move his legs. (RE 108 Page ID# 1179) CT of the head done at Fleming County Hospital was reviewed again by radiologist at UK. It documented possible small subdermal bleed at falx cerebri. (RE 98-5 Page ID# 931)  A.J. spent two days at the University of Kentucky Medical Center. (RE 98-5 Page ID# 931)

The reports of the Defendant's independent medical examination, performed by Manish A. Fozdar, MD and Peter Duquette, Ph. D, and the reports of the treating physicians, William Huffstutter, MD and Melissa Thingvoll, MD, are in substantial agreement.  All reports and evaluations link to the child's current medical and behavioral issues to the injury he suffered at the Farmer's Stockyard on October 12, 2013.

Dr. Huffstutter has diagnosed the following injuries for A.J.: (1) Uncontrolled seizure disorder (2) Attention deficit disorder (3) frontal lobe dysfunction (4) Low average to average intellectual coefficient. A.J. has a much higher risk of intractable epilepsy because of the etiology of his seizures coming from a traumatic brain injury. He also has permanent abnormalities seen on his MRI scan with encephalomalacia. His EEG also reveals persistent seizure activity. (RE 119-4 Page ID# 2185)

Dr. Thingvoll diagnosed A.J. with Attention Deficit Disorder and Partial Epilepsy with Impairment of Consciousness, Intractable. (RE 119-3 Page ID# 2180)

Peter Duguette's Neuropsychological Evaluation states that as a result of A.J.'s brain trauma, A.J. is showing primary deficits for auditory attention, working memory, motor planning, and executive functioning, with which skills generally correspond to the left frontal regions of the brain, which aligns with prior findings from A.J.'s MRI of the brain. (RE 98-6 Page ID# 939) Additionally, the current high degree of frontal lobe dysfunction as measured on neuropsychological testing does suggest a worsening of functional status as a direct result of A.J.'s injury suffered on 10/12/2013.  (RE 98-6 Page ID# 939)

Manish A. Fozdar's Medical Evaluation stated that the left frontal lobe and left temporal lobe appear to be primarily affected due to his injury on 10/12/2013. A.J.'s current behavioral, cognitive, and neurological symptoms are consistent with the type of brain injury he sustained. Inferior frontal lobe injuries such as the one A.J. sustained are known to cause disinhibition leading to impulsive and aggressive behaviors. (RE 98-5 Page ID# 934) Cognitively speaking, A.J.'s prominent deficits are executive function deficits, which are consistent with frontal lobe involvement. A.J.'s brain injury has likely exacerbated his prior attention deficits. (RE 98-5 Page ID# 935) Furthermore, Anthony will likely have permanent impairments.  (RE 98-5 Page ID# 935)

## SUMMARY JUDGMENT STANDARD

Summary Judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue of fact is "genuine" if the evidence is such that a reasonable trier of fact could return a verdict for the nonmovant.  _Anderson v. Liberty Lobby, Inc.,_ 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The substantive law identifies

5

facts that are "material." Facts are "material" only if establishment thereof might affect the outcome of the lawsuit under governing substantive law. _Anderson_, 477 U.S. at 248, 106 S.Ct. 2505. A complete failure of proof concerning an essential element necessarily renders all other facts immaterial. _Celotex Corp. v. Catrett_, 477 U.S. 317, 324-25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When reviewing a Motion for Summary Judgment, the evidence and all reasonable inferences drawn therefrom are viewed in the light most favorable to the nonmoving party. _Matsushita Elec. Indus. Co. v. Zenith Radio Corp._, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## OVERVIEW OF PLAINTIFF'S RESPONSE TO SUMMARY JUDGMENT

1.      The Amended Complaint (RE 106 Page ID# 989-97) outlines alternative causes of action for recovery. The discovery and opinions of experts demonstrate that there remain genuine issues of material fact regarding violations of the Kentucky Building Code as well as common law duties owed to the minor Plaintiff by the Farmers Stockyard, Inc. which were breached.

2.      The differing opinions by the experts concerning the application of the Kentucky Building Code in and of itself precludes Summary Judgment. A genuine issue of fact remains for trial as to which expert opinion is more credible. Inasmuch as a reasonable juror can find one expert more credible the issue is "genuine" and because establishment of this fact would affect the outcome of this matter, the fact was "material" thus precluding Summary Judgment. _Rodgers vs. Monumental Life Insurance Company_, 289 F.3d 442 (6th Cir. 2002. Indeed, competing expert opinions present the "classic battle of the experts' and it [is] up to a jury to evaluate what weight and credibility each expert opinion deserves." _Cadmus v. Aetna Casualty and Surety Co._, 1996 WL 652769 (6th Cir. Nov. 7, 1996) (unpublished) (citation omitted). Conflicting expert opinions as to fact that would affect outcome of suit created genuine dispute of fact requiring trial. _11-56_

6

*Moore's Federal Practice - Civil § 56.22 (2015).*

3.    The failure to submit the design and plans of the elevated walkway in question to the state for review and approval is a violation of the Kentucky Building Code. Said failure was a proximate cause of the injuries suffered by the minor child.

## ARGUMENT

**The Amended Complaint outlines alternative causes of action for recovery. The discovery and opinions of experts demonstrate that there remains genuine issues of material fact regarding a violation of the Kentucky Building Code as well as common law duties owed to patrons of the Farmers Stockyard, Inc.**

Farmer's Stockyard argues that the exclusive cause of action of the Plaintiffs is the allegation of the Building Code violation. (RE 109-1 Page ID# 1228) That is not true. That is only one of the allegations within the Amended Complaint and prosecuted thus far. As such, even if a jury would find that a violation of the Building Code did not occur (which the Plaintiffs clearly believe did happen) Defendant Farmers Stockyard could still be found liable for other common law reasons.

The Amended Complaint, inter alia, sets out:

14.    Due to the defective and dangerous condition of the elevated walkway, the minor child, A.W., JR., suffered substantial injury to his person and has been permanently impaired.

15.    At all times relevant herein the Defendant, FARMERS STOCKYARDS, INC., and Defendant, ABNER CONSTRUCTION CO. INC. had a duty to design and construct the elevated walkway within the industry standards existing at the time of construction and subsequent use by patrons, including children.

16.    At all times relevant hereto the Defendant, FARMERS STOCKYARDS, INC. had a duty to exercise ordinary care to maintain the elevated walkway in a reasonably safe condition for use by the Plaintiffs and all others entering or exiting the premises.

17.    At all times relevant hereto the Defendant, FARMERS STOCKYARDS, INC., had a duty to make reasonable inspections and understand what persons would enter the premises and the areas where patrons were permitted access.

18.    At all times relevant hereto the Defendant, FARMERS STOCKYARDS, INC. had a duty to use reasonable means to identify any risk which will cause serious injury or death to persons including the Plaintiff A.W., Jr. using the elevated walkway.

19.    At all times relevant hereto the Defendant, FARMERS STOCKYARDS, INC., and Defendant, ABNER CONSTRUCTION CO., INC. had a duty to reasonably and feasibly

eliminate any such risk of serious injury or death.

20.     At all times relevant hereto the FARMERS STOCKYARDS, INC., and Defendant, ABNER CONSTRUCTION CO., INC. had a duty to mitigate any risk of serious injury or death that cannot be eliminated.

21.     At all times relevant hereto the Defendant, FARMERS STOCKYARDS, INC. had a duty to warn of any risk of serious injury or death that cannot be either eliminated or reduced.

22.     At all times relevant hereto the Defendant, FARMERS STOCKYARDS, INC., had a duty to advise Defendant, ABNER CONSTRUCTION CO., INC. and the Commonwealth of Kentucky Building Inspector as to the use of the elevated walkway, the persons who would or may be using the elevated walkway including children and whether the use and those permitted to use the elevated walkway had changed since the elevated walkway was installed.

23.     That all times relevant hereto Defendant, ABNER CONSTRUCTION CO., INC. had the duty to inquire as to the use of the elevated walkway, the persons who would or may be using the elevated walkway including children and informing the Commonwealth of Kentucky Building Inspectors as to this use and potential users. That the Defendant, ABNER CONSTRUCTION CO., INC. had a duty to design and construct the elevated walkway in such a manner for the use anticipated by patrons of Defendant, FARMERS STOCKYARDS, INC.

24.     As a direct and proximate result of the negligent acts and/or omissions of the Defendant, FARMERS STOCKYARDS, INC., and/or Defendant, ABNER CONSTRUCTION CO., INC. and their agents, ostensible agents, servants, employees and/or other representatives, the Plaintiffs, ANTHONY WALES, SR., TONYA WALES, and A.W., JR., while exercising due care for the minor child's own safety were injured by the defective condition of the premises.

25.     Defendant, FARMERS STOCKYARDS, INC., and/or Defendant, ABNER CONSTRUCTION CO., INC. knew or should have known of the dangerous condition of the premises and failed to design, construct, repair and/or correct the dangerous condition and failed to warn Plaintiffs of the dangerous condition.

26.     As a direct and proximate result of the negligent acts and/or omissions of the Defendant, FARMERS STOCKYARDS, INC. and/or Defendant, ABNER CONSTRUCTION CO., INC. by and through their agents, ostensible agents, servants, employees and/or other representatives, which are complained of in this complaint, the minor child, A.W., JR., incurred medical expenses both past and future, physical and mental pain and suffering both past and future, lost enjoyment of life both past and future and suffers permanent impairment of his power to labor and earn money in the future.

27.     The acts and/or omissions of the Defendant, FARMERS STOCKYARDS, INC., and/or Defendant, ABNER CONSTRUCTION CO., INC. by and through their agents, ostensible agents, servants, employees and/or other representatives, which are complained of in this Complaint, were negligent, thus making the defendant answerable to the Plaintiff for compensatory damages.

28.     The acts and/or omissions of the Defendant, FARMERS STOCKYARDS, INC., and/or Defendant, ABNER CONSTRUCTION CO., INC. by and through their agents, ostensible agents, servants, employees and/or other representatives, which are complained of in this Complaint, were grossly negligent, reckless, wanton or willful thus making the Defendant answerable to the Plaintiffs for punitive damages.

NEGLIGENCE PER SE

30.     Defendant FARMERS STOCKYARDS, INC. failed to exercise its duty to submit the drawing/design/plans of the elevated walkway to the Commonwealth of Kentucky for a review to determine whether said walkway complied with the Kentucky Building Code for its intended use by patrons, including minor children. Violation of subject code was a proximate cause of the injuries and damages sustained herein, and thereby was negligent per se.

31.     Defendant, FARMERS STOCKYARDS, INC., maintained the elevated walkway within its facility in such a manner as to not be in compliance the Kentucky Building Code.  Violation of subject code was a proximate cause of the injuries and damages sustained herein, and thereby the Defendant was negligent per se.

32.     Defendant, ABNER CONSTRUCTION CO., INC. at the direction of Defendant, FARMERS STOCKYARDS, INC. installed the elevated walkway on the premises of Defendant, FARMERS STOCKYARDS, INC. in such a manner as to not be in compliance with the Kentucky Building Code. The violation of subject Building Code was the proximate cause of the injuries and damages sustained herein and thereby Defendant, ABNER CONSTRUCTION CO., INC. and/or Defendant, FARMERS STOCKYARDS, INC. were negligent per se.

33.     As a direct and proximate result of the failure to comply with Kentucky Building Code by the Defendant, FARMERS STOCKYARDS, INC., and/or Defendant, ABNER CONSTRUCTION CO., INC. by and through their agents, ostensible agents, servants, employees and/or other representatives, which are complained of in this complaint, the minor child, A.W., JR., incurred medical expenses both past and future, physical and mental pain and suffering both past and future, lost enjoyment of life both past and future and suffers permanent impairment of his power to labor and earn money in the future.

34.     The acts and/or omissions of the Defendant, FARMERS STOCKYARDS, INC., and/or Defendant, ABNER CONSTRUCTION CO., INC. failure to comply with Kentucky Building Code, by and through their agents, ostensible agents, servants, employees and/or other representatives, which are complained of in this complaint, were negligent, thus making the defendant answerable to the Plaintiff for compensatory damages.

35.     The acts and/or omissions of Defendant, FARMERS STOCKYARDS, INC., and/or Defendant, ABNER CONSTRUCTION CO., INC. failure to comply with Kentucky Building Code, by and through its agents, ostensible agents, servants, employees and/or other representatives, which are complained of in this complaint, were grossly negligent, reckless, wanton or willful thus making the Defendant answerable to the Plaintiffs for punitive damages.

        Thus, a clear reading of the Amended Complaint demonstrates that the causes of action outlined in paragraphs 14-28 are for common law negligence and 30-35 are the violations of the Building Code.

***Common Law Negligence Claims***

        Recently, the Kentucky Supreme Court issued the opinion of *Carter vs. Bullitt Host, LLC, 2015 Ky. LEXUS 1854 (Ky. Sept 24, 2015)* stating that Summary Judgment was no longer

9

appropriate in premises liability cases where "open and obvious" dangers exist. In doing so the Court reiterated the duty of a landowner by stating:

> "The owner or possessor of the property owes him the active, positive duty of keeping those parts of the premises to which he is invited, or may reasonably be expected to use, in a condition reasonably safe for his use in a manner consistent with the purpose of the invitation. If the possessor knows, or by the exercise of ordinary care or reasonable diligence could discover a natural or artificial condition which, if known, he should realize involves an unreasonable risk to the invitee and does not remedy the condition or serve fair warning of peril, he is negligent." *City of Madisonville vs. Poole*, 249 S.W.2d at 133, 135 (Ky. 1952)

In this case, the child and his parents were invitees of Farmers Stockyards on the date of the fall. The Farmers Stockyard was having its Saturday livestock auction on the date in question. (RE 117-1 Page ID# 1983). The Wales family was present to possibly purchase livestock. (RE 108, Page ID #1152) Farmers Livestock receives fees from the sale of livestock. (RE 117-1 Page ID# 1991)The Wales family went to the area where the livestock were present to view possible animals to purchase. (RE 108, Page ID# 1159-1160) The Wales family proceeded to the elevated walkway when young A.J. bent down to tie his shoe. The child fell through the walkway. (RE 108, Page ID# 1165)

The *Restatement (Second) of Torts* § 332 (1965) observes that "invitee" is a term of art with a special meaning in the law. A person is characterized an "invitee" if:

(1) he enters by invitation, express or implied, (2) his entry is connected with the owner's business or with an activity the owner conducts or permits to be conducted on his land and (3) there is mutuality of benefit or benefit to the owner.

*Johnson v. Lone Star Steakhouse & Saloon of Kentucky, Inc.*, 997 S.W.2d 490, 491-492 (Ky.App.1999) (quoting *Black's Law Dictionary*, 827 (6th ed.1990)) (internal quotation marks omitted). *See also* 62 Am.Jur.2d *Premises Liability* § 87 (1990).

The Kentucky Supreme Court in *Shelton vs. Kentucky Easter Seals Society, 413 S.W.3d 901 (Ky. 2013)* outlined the duties owed to an invitee as follows:

> First and foremost, a land possessor is subject to the general duty of reasonable care.

"The concept of liability for negligence expresses a universal duty owed by all to all." 25 And "every person owes a duty to every other person to exercise ordinary care in his activities to prevent foreseeable injury." 26 Of course, possessors of land are not required to ensure the safety of individuals invited onto their land; but possessors of land are required to maintain the premises in a reasonably safe condition.27[413 S.W.3d 909]

In addition, Kentucky law remains steadfast in its adherence to the traditional notion that duty is associated with the status of the injured party as an invitee, licensee, or trespasser.28 While the distinctions between the first two classifications are often minor and unclear, an invitee is generally defined as one who "enters upon the premises at the express or implied invitation of the owner or occupant on behalf of mutual interest to them both, or in connection with the business of the owner or occupant." 29 Generally speaking, a possessor of land owes a duty to an invitee to discover unreasonably dangerous conditions on the land and either eliminate or warn of them.30

A.J. was an invitee upon the premises of Farmers Stockyards. As such, not only was he owed the duty of having the premises maintained in a reasonably safe condition, he was also owed the duty that Farmers Stockyards had to discover unreasonably dangerous conditions and either eliminate or warn of them. Ginn knew that small children would be on the elevated walkway. (RE 117-1 Page ID# 1974-75) There were no signs placed on the elevated walkway or personnel who warned the Plaintiff that the condition as constructed would allow small children to fall through the rails. In spite of the fact that there were signs placed on the gates below the elevated walkway prohibiting persons from entering the livestock pens for safety reasons. (RE 117-1 Page ID# 1975) The livestock were housed below the elevated walkway causing the children to look over the top of the rails or through the rails to see the cattle. (RE 117-1 Page ID# 2026-27) All of which makes it reasonably foreseeable that a child could fall through the rails which he did. Ginn himself testified that he was aware that a child could fall through the rails.

A.    ….Anyway the space is about like that. How did that kid get through there? If he was your kid, would you let him lean—look over in there and lean over off the top of that? No, you wouldn't.
Q.    Why? Because it's dangerous?
A.    Is it dangerous?
Q.    Yeah.

11

A.    Well, I wouldn't let—
Q.    Well, I'm going to ask you now. You asked me—you asked me the question would I let my kid do that. Right?
A.    Yes.
Q.    Why would you not let your child do that?
A.    I would think maybe he would fall, a little kid, yes—
Q.    Okay.
A.    --because he could get between there.
Q.    So you agree that a child could fall through that rail?
A.    If he's not attended.
(RE 117-1 Page ID# 1983)

Later in his deposition he was asked:

Q.    Let me ask you this. Do you have a restriction that if there's kids up there, the parents have to be with them?
A.    No, sir.
Q.    So kids can be up there on their own, can't they?
A.    Yes, sir.
(RE 117-1 Page ID# 1986)

Wayne Meyers in his amended report as to the substantial factors that caused the fall and injuries to the child set out "Had there been signs restricting the use of the elevated walkway to employees only this fall could have been prevented. However, the owners needed this walkway to be used by their customers, the public, to view livestock for their prospective purchase." (RE 107-1 Page ID# 1038-39) The Defendant has offered no expert testimony on the warning issue, and in fact their expert declined to comment on signs. (RE 116-2 Page ID# 1899, 1906)

Meyer also opined had the owner or employees been more observant about the hazard that such a large opening in a guardrail 10 feet 6 inches above livestock stalls and the concrete floor below provides, this fall could have been avoided. (RE 107-1 Page ID# 1054) As set out above Ginn knew of the hazard. Also, Ginn had been to the Maysville Stockyards where there were guards preventing a child falling through prior to this incident. (RE 117 Page ID# 1952) He observed their elevated walkway at that facility (RE 117-1 Page ID# 1967)

Goff was asked the following:

12

Q.      "Do you think this walkway was safe for children?"
A:      I think this walkway conforms to the Kentucky Building Code at the time it was built.
Q.      That's not what I asked.
A.      I have no opinion on safety.
Q.      As constructed on the 21-inch horizontal rail versus the four-inch vertical rail, would you agree that it posed a greater risk of fall by a child?
A.      I don't—I'm testifying today regarding codes. (RE 116-2 Page ID# 1903-04)

John Kingston testified that if the rails at Farmers Stockyards, Inc. had been 4" vertical rails the child would not have fallen through (RE 115-1 Page ID# 1764)

The Plaintiffs in the amended answers to Interrogatory # 9 inquiring as to the defect or hidden danger responded as follows:

The Plaintiff states that upon review and inspection of the Kentucky Building and Housing Archives, that there does not exist in the archive files of said agency a final occupancy permit for the Farmer's Stockyard after the renovation of the facility on or about 1996. Additionally, the elevated walkway had inadequate safeguards for public protection.

The Plaintiffs incorporate the Amended Report of Wayne M. Meyer and the testimony outlined in his deposition. Additionally, the Plaintiffs believe that inviting children on the walkway who are not of an age to recognize or appreciate the danger of the subject walkway is improper. The Defendant had knowledge of the walkway and its use by the public since being opened. (RE 119-1 Page ID # 2164)

The law has always made special protection provisions for children. The "attractive nuisance" doctrine even protects children who are trespassers. Young Mr. Wales was not a trespasser, but an invitee who was directed by Farmers Stockyard to the unreasonably dangerous area. A six year old child cannot be negligent as a matter of law. Kentucky courts have held that "a child under seven years of age is considered incapable of negligence, and one between the ages of seven and fourteen is presumptively not charged with such, but in the latter [age] category the presumption may be rebutted by counter testimony." _Willoughby v. Stilz_, 387 S.W.2d 10, 11 (Ky. 1965).

In the Motion for Summary Judgment the Defendant cited the deposition of the father as

follows:

Q.      At any time that you were up there, did you notice any kind of maintenance problem with the catwalk, meaning—

A.      No.

Q.—not maintained, rusted, falling apart, something on it that shouldn't be, anything like that?

A.      No, sir, I did not.

Q.      In your opinion, when you went up on the catwalk, did you see anything wrong with the way the catwalk was laid out, anything wrong with the railing, anything like that?

A.      No, sir. (RE 109-1 Page ID# 1227-28)

The Plaintiffs submit it was the child who was injured and the statement or observations of his father cannot be imputed to the child on the issue of absolving liability of the Defendants for summary judgment purposes. The child cannot be negligent as a matter of law.

The Plaintiffs have also alleged that the elevated walkway did not meet the industry standards for safety at the time of the construction for elevated walkways in stockyards. The Bluegrass Stockyards in Mt. Sterling were constructed in 1983, in Richmond in 1998, and in Maysville in 1994. The Farmers Stockyards were built in 1997. The elevated walkways in Mt. Sterling, Richmond and Maysville were constructed in a manner where there was at least the 4" vertical railing or fencing to prevent children from falling through. (RE 116-3 Page ID# 1923-25) The Farmer's Stockyards had their rails 16" and 10" apart and horizontal. (See Exhibit 1) Abner had constructed the stockyards at Maysville. (RE 118 Page ID# 2087) Goff agreed that the elevated walkways in these other stockyards provided greater protection for children than did Farmer's Stockyards. (RE 116-2 Page ID# 1890)

Consequently, a jury could find that the walkway as constructed was unreasonably dangerous for children; a jury could find that it was negligent to direct customers, especially children to this unreasonably dangerous area; a jury could find that Farmer's Stockyard should have warned of the dangerous condition and failed to do so and a jury could find that the

elevated walkway was not to industry standards. None of the above would require a finding by the jury that the walkway violated the Kentucky Building Code. All of the above could be found to be a breach of duty by Farmers Stockyard and the proximate cause of the child's injuries.

**2.     The differing opinions by the experts concerning the application of the Kentucky Building Code in and of itself precludes Summary Judgment.**

A genuine issue of material fact remains for trial as to which expert opinion concerning the interpretation of the code is more credible. Inasmuch as a reasonable juror can find one expert more credible the issue is "genuine" and because establishment of this fact would affect the outcome of this matter, the fact was "material" thus precluding summary judgment. *Rodgers vs. Monumental Life Insurance Company*, 289 F.3d 442 (6th Cir. 2002 Indeed, competing expert opinions present the "`classic battle of the experts' and it [is] up to a jury to evaluate what weight and credibility each expert opinion deserves." *Cadmus v. Aetna Casualty and Surety Co.,* 1996 WL 652769 (6th Cir. Nov. 7, 1996) (unpublished) (citation omitted). Conflicting expert opinions as to fact that would affect the outcome of suit created a genuine dispute of fact requiring trial. *11-56 Moore's Federal Practice - Civil § 56.22 (2015).*

In his deposition the Defendant's expert Herbert Goff was asked about an article he had authored concerning giving forensic opinions in Building Code cases:

Q.      On the last page you indicate, "In some areas, the forensic professional simply has to make a judgment call. In a court of law, this may require the professional to demonstrate his knowledge, training and education in forming an opinion and not just years of experience." Do you agree with that?"
A.      I wrote it.
Q.      But do you agree with it?
A.      Absolutely     (RE 116-2 Page ID# 1868)

The primary dispute between the experts is that Meyer opines that the elevated walkway does not meet the code for public use. (RE 107-1 Page ID# 1027, 1039) and Goff opines the elevated walkway meets the code for public use. (RE 116-2 Page ID# 1884) Both experts agree

15

that the term "public use" is not defined in the code. (RE 107-1 Page ID# 1034-1035 and RE 116-2 Page ID# 1907) Both experts agree that the code requires interpretation. (RE 107-1 Page ID# 1047 and RE 116-2 Page ID# 1886) Goff takes the position that once a building is determined to be S-1 then no matter who is using it only the 21 inch requirement is needed. (RE 116-2 Page ID# 1886) Meyer opines that once you direct the public to the elevated walkway, the code requires 4" vertical rails are needed to prevent exactly what happened in this case. (RE 107-1 Page ID# 1049) Meyer opines that the Code must be read as a whole and interpreted in the light of intent to protect the public.(RE 107-1 Page ID# 1050-1051) Both Goff and Meyer agree that the elevated walkway plans should have been submitted to the state for approval. (RE 107-1 Page ID# 1067 and RE 116-2 Page ID# 1879) Meyer opines that the state would have required the 4" rails if told the public would be using the walkway (RE 107-1 Page ID# 1032).

The fundamental flaw in the Defendant's argument is that there does exist an ambiguity in this section of the code because it does not reference whether it is anticipated that the public would be invited in an area that has been classified as hazardous. Meyer is an architect and has spent the greater part of 35 years in the business of building code compliance. He has been involved as a building official for Cincinnati, he co-authored a new rehabilitation code that evolved into CH 34 "Existing Buildings and Structures" of the International Building Code and is a consultant for architects. His projects include Miami Marlins Ballpark, The Aronoff Center, Mississippi Children's Museum, Kentucky State Capitol and Annex Renovation and Restoration and many others. (RE 107-1 Page ID# 466)  His opinion is that although the area where the child fell was designed as an S-1 occupancy (livestock storage) when the public was directed by the Stockyards to the elevated walkway the Code required for the safety of the public greater safety measures than the guardrail set out for S-1 structures. He states:

16

"It's the intent of the code provisions to provide public safety wherever the public is intended to be…that level of safety be provided to protect them, and that's in the first paragraph. Anything open to the public would have to meet those requirements. The second one that deals with other than public spaces, with the exception of where you do have the public, then you can go with the 21-inch rule. So the intent there clearly says—where you have the general public that's invited to even an S-1 occupancy on an elevated walkway to view livestock for possible purchase and so forth, they have to be protect to the level of any other occupancy that's providing public access period."

Q.   And your basis for that statement is Chapter 101.4 intent of the code, correct?

A.   That and my 35 years of applying building codes, yes.  (RE 107 Page ID# 1050-51)

Goff opines that once the building is identified as an S-1 structure the guardrails only have to be the 21" spacing regardless of who is using the walkway including the public. His opinion is best demonstrated by the following testimony in his deposition:

Q.   Okay. Which would be—lets take Walmart for example. Patrons are allowed to look at the stocking—the shelves, all the goods on the shelves. That would be mercantile, I guess?
A.   Uh-huh.
Q.   Okay. What if they decided to open up the back storage and say all the patrons can come back here and climb up on these elevated walkways and look what we got back here. You're saying that because it was designated as S-1, they wouldn't have to do anything- - Walmart wouldn't have to do anything else?
A.   That's right.   (RE 116-2 Page ID# 1895)

In the Defendants' Motion for Summary Judgment it is stated:

A review of the plain text of this definition (S-1) does not support Mr. Meyer's position that S-1 occupancies do not allow for the public to access them. (RE 109 Page ID# 1230)

The same is true that the plain text does not provide that the public **_can_** be allowed in the area.

The Code sets out the 21" horizontal rail requirement is for jails and prisons (I-3), factory (F), hazardous storage (H1,H2 & H3) and storage (S) uses[defined as structures used primarily for the storage of goods, wares or merchandise]. *KBC 1021.3* All of which are uses not intended for the public being directed into those areas.

17

The 4" vertical rail code requirement is for areas used by the public. Groups A (assembly), B (Business), E (education), H-4 (This group is defined under the Code as all buildings and structures which contain materials that are *health hazards* [italicized in the code]) I-1 (defined as buildings and structures which house six or more individuals who, because of age, mental disability or other reasons, must live in a supervised environment), I-2 (buildings used for medical, surgical, psychiatric, nursing or custodial care on a 24 hour basis), M (mercantile) and R (residential).

It is almost nonsensical to consider that A.J. was protected by the requirements of the Kentucky Building Code at Farmer's Stockyard on October 12, 2013 while in the restaurant, while in the bathroom and while sitting in the bidding area, however, when he and his family were directed by the Stockyards to the most dangerous part of the facility (the elevated walkway) to view possible purchases he was afforded the least amount of the protection under the code. That is Mr. Goff's opinion. Mr. Meyer interprets the code just opposite and states that the child should have been afforded the same protection as in the other public areas and this catastrophic injury would have been prevented. Meyer's interpretation is also supported by the plain language set out in the preface of the code:

*"It [the code] provides the minimum standards to insure the public safety, health and welfare insofar as they are affected by building construction and to secure safety to life and property from all hazards incident to the occupancy of buildings, structures and premises."*

Goff agrees in his article: "The purpose of codes in general is to protect the life and welfare of citizens." (RE 116-2 Page ID# 1862) He further acknowledged if the code is not followed that the likelihood of injury is greater. (RE 116-2 Page ID# 1863).

This Court should also consider that the Building Code provides an appeal process which

is indicative that the Code must be interpreted as to the entire intent of the Code when applying each section. In Section 122.3 it states:

> ***Method of Appeal:*** Application for appeal may be made when it is claimed in writing that **the true intent of this code or the rules legally adopted thereunder have been incorrectly interpreted**, the provisions of this code do not fully apply, or an equally good or better form of construction can be used, or that the code official has refused to grant a modification to the provisions of this code covering the manner of construction or material to be used in the erection, alteration or repair of a building or structure. (emphasis added)

Courts have recognized that a provision that allows for appeals of administrative decisions points toward possible ambiguity in building code requirements and enforcement that are subject to varied interpretation. *State vs. Arkell, 672 N.W.2d 564 (Minnesota 2003)*

The Code must be read as a whole with an understanding of the intent to protect the public. It is a public safety regulation. Consequently, there is a genuine issue of material fact on this issue concerning the differing opinions as to the interpretation of this section of code by the experts.

**3.    The failure to submit the design and plans of the elevated walkway in question to the state for review and approval is a violation of the Kentucky Building Code. Said failure is not merely administrative and was a proximate cause of the injuries suffered by the minor child.**

Both Goff and Meyer state that the plans showing the design for the elevated walkway should have been submitted to the state for review and approval. (RE 107-1 Page ID# 1067 and RE 116-2 Page ID# 1879) Because the plans were not submitted this is a violation of the building Code. (RE 116-2 Page ID# 1879, 1905) A violation of the Code is unlawful.

> It shall be unlawful for any person, firm, or corporation to erect, construct, alter, extend, repair, remove, demolish or occupy any building or structure or equipment regulated by this code, or cause same to be done, in conflict with or in violation of any provisions of this code. KBC 116.1

Farmer's Stockyard has taken a circuitous route in addressing this particular violation. First, it named John R. Kingston, the architect who drew the plans for the addition, as a Third

Party Defendant.(RE 38 Page ID# 388) The plans produced by Kingston did not include the elevated walkway design for review. (RE 118 Page. ID# 2103) He was never asked to design or give an opinion as to this walkway. (RE 115-1 Page ID# 1751) He was subsequently dismissed from this case by Agreed Order. (RE 91 Page ID# 890-92)

Todd Barhorst of Abner Construction did not draw the plans. He is unaware if the elevated walkway met the Code provisions. (RE 118 Page ID# 2120) In the middle of his deposition, his Counsel James West, stated that Barhorst needed to amend his Interrogatory Answer which had stated that no plans were submitted to the state to he was not sure if the plans for the elevated walkway were not submitted to the state. (RE 118 Page Id# 2125)

Farmer's Stockyards then filed a Third Party Complaint against Anderson Steel, LLC. (RE 34 Page ID# 260-63) The principal officer of Anderson Steel LLC, John Norris, has passed away. (RE 84-1 Page ID# 817) Barhorst testified that Mr. Norris of Anderson Steel, LLC drew the plans for the elevated walkway. (RE 118-1 Page ID# 2094) Again, no one could state that the plans for the walkway had been sent to the state for review even if Norris drew them. (RE 118-1 Page ID# 2105, 2126) It should be noted that the elevated walkway was constructed in 1997. According to the official state records at the Kentucky Secretary of State, Anderson Steel, LLC was not formed until October 4, 2001.(Exhibit 4 )

Meyer opines that the state would have required the 4" rails if told the public would be using the walkway. (RE 107-1 Page ID# 1032) His report reflects "Had the Department of Housing, Building and Construction, either during plan review or during construction, been made aware that this elevated walkway would be used by the public, it would have required the construction to comply with the provisions of the KBC for public use. (RE 87-1 Page ID# 861)

If the plans had been submitted for the walkway, the use by the public, including

20

children, would have been disclosed to officials. Farmers Stockyard argues that this is merely an

administrative detail and was not a substantial factor in bringing about the injury. (RE 109-1

Page ID# 1229) The Plaintiff contends that this goes to the very crux of this case and the breach

of this duty was a substantial factor in failing to prevent the fall of young Mr. Wales.

> "Failure to comply with the terms of a statute is negligence per se. However, in an
> action for damages, the violation of the statute must be the proximate cause of the
> injury to permit recovery." *Peak v. Barlow Homes, Inc.,* Ky.App., 765 S.W.2d 577,
> 578 (1989). It has been held that "[t]o constitute proximate cause, an act must be such
> that it induced the accident and without which the accident would not have occurred."
> *Gerebenics v. Gaillard,* Ky., 338 S.W.2d 216, 219 (1960). Proximate cause has also
> been found to be "that which, in a natural and continual sequence, unbroken by any
> new,independent cause produces the injury, and without which the injury would not
> have occurred." *Newton v. Wetherby's Adm'x,* 287 Ky. 400, 403, 153 S.W.2d 947
> (1941). "When the original negligence is remote and only furnishes the occasion of
> the injury, it is not the proximate cause thereof." *Peak, supra* at 579.

*Estate of Wheeler v. Veal Realtors and Auctioneers, Inc.,* 997 S.W.2d 497, 498-99 (Ky. App.
1999).

The Building Code is designed to protect the public from harm resulting from the

construction, repair, etc. of buildings such as the Defendant's. The mere fact that the plans were

not submitted for review effectively eliminated this safety review and it is foreseeable, if not

expected, that harm to the public could occur if proper review and approval is not rendered.

A jury should determine whether the violation of this particular code provision is a

proximate cause of the injuries sustained by the Plaintiff.

## CONCLUSION

When reviewing a Motion for Summary Judgment, the evidence and all reasonable

inferences drawn therefrom are viewed in the light most favorable to the nonmoving party.

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d

538 (1986). The Plaintiffs have demonstrated that they could prevail before a jury on all of the

above issues upon review of the record. Consequently, the Motion for Summary Judgement should be overruled.

Respectfully submitted,

S/Stephen L. Bates
Stephen L. Bates II (KBA # 92273)
Counsel for Plaintiffs
92 S. Main Street, P.O. Box 166
Dry Ridge, KY 41035
bateslaw@mw.twcbc.com
(859) 823-0360
(859) 823-0429 [Facsimile]


S/Steven N. Howe
Steven N. Howe (KBA #81612)
Counsel for Plaintiffs
94 S. Main Street
Dry Ridge, KY 41035
howelaw@fuse.net
(859) 824-0500
(859) 824-0555 [Facsimile]

## CERTIFICATE OF SERVICE

On December 9, 2015, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a Notice of Electronic Filing to all counsel of record.

Anthony Pernice
Drew Byron Meadows
Attorney for Defendant, Farmers Stockyards, Inc.
771 Corporate Drive, Suite 900
Lexington KY 40503

James M. West
Attorney for Defendant, Abner Construction Co.
2045 Dixie Highway
Fort Mitchell KY 41011

Luke Wingfield
Attorney for Auto-Owners Insurance Co.
201 East Main Street, Suite 900
Lexington KY 40507

John H. Rompf, Jr.
Attorney for John R. Kingston Architects
P.O. Box 578
Winchester, KY 40392

R. Craig Reinhardt
Daniel C. Mack
Attorney for Abner Construction Company
449 Lewis Hargett Circle, Suite 210
Lexington, KY 40503

<u>S/Steven N. Howe</u>
Counsel for Plaintiff