```
                UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF KENTUCKY
```
**CENTRAL DIVISION at LEXINGTON**

| | |
|---|---|
| ANTHONY WALES, SR. and TONYA WALES, Individually and as parents & guardians of an unmarried infant, Next Friend A.W., Jr., | ) ) ) ) ) | Action No. 5:14-cv-394-JMH |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | **MEMORANDUM OPINION AND ORDER** |
| FARMERS STOCKYARDS, INC., | ) ) ) | |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*

This matter is before the Court upon the motions for summary judgment of Farmers Stockyards, [DE 109], and Abner Construction Company, [DE 120]. The motions have been briefed fully and are ripe for ruling. For the following reasons, the motions will be granted in part and denied in part.

**I.   Facts**

Anthony and Tonya Wales, along with their children, including six-year-old A.W., Jr., ("A.J.") visited the Farmers Stockyards in Flemingsburg, Kentucky on October 12, 2013, to shop for livestock. Approximately ten feet above a livestock pen, there is an elevated walkway where the public can view the livestock available for purchase. This area is commonly referred to as a catwalk. A.J. and his father were on the catwalk when A.J. stopped to tie his

shoe, at his father's direction.  Anthony Wales reported that in an instant, he heard A.J. holler "Daddy," and A.J. disappeared through the catwalk's railing and into the livestock pen below. When Mr. Wales got to his son, A.J. was unconscious, but regained consciousness after a couple of minutes, reporting that he could not move his legs.  He was transported to the Fleming County Hospital where he was diagnosed with bleeding on the brain and a skull fracture.  From there he was transferred to the University of Kentucky Medical Center, where he spent three days.  Since the injury A.J. has experienced seizures, as well as a host of cognitive and emotional problems.

**II.  Standard of Review**

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In ruling on a motion for summary judgment, the court resolves all reasonable inferences in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The pivotal inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.  When the "record taken as a whole could not lead a rational trier of fact to find for the

2

non-moving party, there is no genuine issue for trial" and summary judgment is appropriate. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (quotations marks and citation omitted).

**III. Discussion**

    **A.  Negligence Per Se**

A negligence per se claim is a negligence claim with a statutory standard of care substituted for the common law standard. *Lewis v. B&R Corp.*, 56 S.W.3d 432, 438 (Ky. Ct. App. 2001). Plaintiffs' negligence per se claim is based on alleged violations of the Kentucky Building Code.[1]

> In order for a violation to become negligence per se, the plaintiff must be a member of the class of persons to be protected by the regulation, and the injury suffered must be an event which the regulation was designed to prevent. Only when both requirements are affirmatively demonstrated is negligence per se established with the applicable regulation or statute defining the relevant standard of care.

*Alderman v. Bradley,* 957 S.W.2d 264, 267 (Ky. Ct. App. 1997). The Uniform State Building Code establishes standards for the construction of buildings. KRS § 198B.050. In *Edwards v. Hambel*, No. 2003-CA-940-MR, 2005 WL 3116096, *2 (Ky. Ct. App. Nov. 23, 2005), the Kentucky Court of Appeals recognized that the Kentucky Building Code "protects both the public generally and the individual and also promotes the public policy of implementing uniform construction standards statewide." The court finds, and

---

[1] The parties agree that the 1994 version of the Kentucky Building Code applies. Farmers Stockyards has filed the 1994 Code in the record at DE 109 and 110.

the defendants do not contest, that the plaintiffs, as invitees of Farmers Stockyards, may raise a claim for negligence per se.

With respect to the specifics of Plaintiffs' negligence per se claim, the parties agree that the Farmers Stockyards building is classified as "S-1" under the Code—a sub-class of storage. Chapter 10 of the 1994 Code addresses the design requirements for elevated walkways. It provides, with respect to "Opening Limitations":

> In occupancies in Use Groups A, B, E, H-4, I-1, I-2, M and R, and in *public garages* and open parking structures, open guards shall have balusters or be of solid material such that a sphere with a diameter of 4 inches (102 mm) cannot pass through any opening. Guards shall not have an ornamental pattern that would provide a ladder effect. . .
>
> In occupancies in Use Groups I-3, H-1, H-2, H-3 and S, other than *public garages* and open parking structures, balusters, horizontal intermediate rails or other construction shall not permit a sphere with a diameter of 21 inches (533 mm) to pass through any opening.

Ky. Building Code § 1021.3 (1994) (emphasis in original). The parties agree that the guardrails on the walkway contained three horizontal intermediate rails. The opening from the walkway to the first horizontal rail was 17 inches (+/-), with approximately ten inches between the other two horizontal rails above.[2]

Relying on the plain language of Section 1021.3, Defendants contend that the walkway complied with the Code, since the largest

---

[2] These measurements are based on the findings of Farmers Stockyards' expert Herb Goff. *See* DE 113-1, ID# 1623. Plaintiffs' expert, Wayne Meyer, found the largest opening to be slightly smaller, at 16 inches. *See* 46-1, ID#470.

4

opening was 17 inches and, therefore, a sphere with a diameter of 21 inches could not have passed through. Plaintiffs argue that because the walkway was open to the public, the Code imposes stricter safety requirements than those stated in the above-quoted language. Relying on the opinion of their expert, Wayne Meyer, Plaintiffs contend that the walkway was subject to the stricter "opening limitations" imposed upon Use Groups A, B, E, H-4, I-1, I-2, M and R—i.e., a sphere with a diameter of four inches was not permitted to pass through any of its openings.

To be sure, Plaintiffs' desired interpretation of the Code is not found in the plain text. Plaintiffs urge the court to look to the drafters' intent to reach this result. The court begins at Section 101.4, as Plaintiffs suggest. It reads, in pertinent part:

> The code's intent shall be to secure public safety, health and welfare affected by building construction quality, through structural strength, adequate *means of egress*, light and *ventilation*, electrical systems, plumbing, energy, boiler safety, accessibility for persons with physical disabilities, life safety from hazards of fire and explosion and other disasters and, in general, to secure safety to life and property from all hazards incident to the removal, design, erection, repair or occupancy of buildings.

(emphasis in original). Essentially, Plaintiffs contend that because the drafters' intent was to secure public safety, and because the walkway was open to the public, the elevated walkway at Farmers Stockyards was required to have guards with openings no greater than four inches apart. This logical leap simply has no

5

support in the text.[3] At the outset of the Code, the drafters stated their intent to secure public safety. It follows that the Code, *as written*, has that intent in mind. The court may not amend or add to the plain language of a statute and will not do so in the case of the Kentucky Building Code. *See Telespectrum, Inc. v. Public Serv. Comm'n of Ky.*, 227 F.3d 414, 421 (6th Cir. 2000).

The court now turns to Plaintiffs' claim regarding Defendants' alleged failure to submit the walkway plans to the state for approval prior to construction. Section 107.1 of the Building Code requires that, prior to the construction or alteration of a structure, the owner or his agent shall submit an application to the state. The application is required to contain a description of the work to be done, along with other specified documents. If the application is approved, the applicant receives a permit to build, pursuant to Section 108. Plaintiffs contend that Defendants did not go through with this process with respect to the elevated walkway and their failure to do so constitutes negligence per se. Defendants do not concede that they did not go through the permit process—they simply have no proof that they did.

---

[3] While Plaintiffs contend that this presents a classic "battle of the experts" to be resolved by the jury, clearly this is a question of law to be resolved by the court. *See Chavez v. Carranza*, 559 F.3d 486, 498 (6th Cir. 2009) ("An expert opinion on a question of law is inadmissible."); *see also Static Control Components, Inc. v. Lexmark Int'l, Inc.*, 5:02—cv-571, 5:04-cv-84, 2007 WL 7083655, *7 (E.D. Ky. May 12, 2007) ("It is within the sole province of the trial court to instruct the jury on the law and its applicability.").

"It is beyond dispute that causation is a necessary element of proof in any negligence case." *Baylis v. Lourdes Hosp., Inc.*, 805 S.W.2d 122, 124 (Ky. 1991). Kentucky has adopted the Restatement (Second) of Torts approach with respect to causation, the foundation of which is the concept of "substantial factor." *See Deutsch v. Shein*, 597 S.W.2d 141, 143-44 (Ky. 1980). The primary principle in that analysis is:

> To be a legal cause of another's harm, it is not enough that the harm would not have occurred had the actor not been negligent . . . . . this is necessary, but it is not of itself sufficient. The negligence must also be a substantial factor in bringing about the plaintiff's harm.

Because the walkway complied with the 1994 Kentucky Building Code, Defendants' alleged failure to comply with the permitting process was not a substantial factor in bringing about Plaintiffs' harm. Assuming that the Defendants did not request a permit prior to constructing the walkway, there is no indication that the state would not have granted it. Accordingly, summary judgment will be granted for Defendants with respect to Plaintiffs' negligence per se claim.

**B.   Common Law Negligence**

Compliance with safety regulations, whether promulgated at the federal, state, or local level, "does not relieve one of tort liability . . . ." *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 300 (6th Cir. 2007). At the time A.J. was

7

injured, the Wales family were invitees at Farmers Stockyards. "An invitee enters upon the premises at the express or implied invitation of the owner or occupant on business of mutual interest to them both, or in connection with business of the owner or occupant." *Scuddy Coal v. Couch*, 274 S.W.2d 388, 389 (Ky. 1955). In *Horne v. Precision Cars of Lexington*, 170 S.W.3d 364, 367 (Ky. 2005) (quoting Restatement (Second) of Torts (1965)), the Kentucky Supreme Court discussed the duty of care landowners owe to invitees.

> Section 343.  Dangerous Conditions Known to or Discoverable by Possessor
>
> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
>
> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
>
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
>
> (c) fails to exercise reasonable care to protect them against the danger.
>
> Section 343A.  Known or Obvious Dangers.
>
> (1) A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.
>
> (2) In determining whether the possessor should anticipate the harm from a known or obvious danger, the

>    fact that the invitee is entitled to make use of public land, or the facilities of a public utility, is a factor of importance indicating that the harm should be anticipated.

"Known means not only knowledge of the existence of the condition or activity itself, but also appreciation of the danger it involves." *Horne*, 170 S.W.3d at 367 (quoting Restatement (Second) of Torts at § 343A cmt. B). And "[g]enerally speaking, a possessor of land owes a duty to an invitee to discover unreasonably dangerous conditions on the land and either eliminate or warn of them." *Shelton v. Ky. Easter Seals Soc., Inc.*, 413 S.W.3d 901, 909 (Ky. 2013). Farmers Stockyards' owner, Eldon Ginn, testified in his deposition that he would not allow his own child to lean over the rail and look into the livestock pen because it is dangerous—that a child might fall. Ginn also testified that children are not required to be attended by adults while on the catwalk. Additionally, the livestock pens are below the catwalk so that customers can view the animals and children, being naturally curious, are likely to lean over the railing to observe them, as well. Plaintiffs point out that signs are placed on the gates below the catwalk prohibiting persons from entering the livestock pen for safety reasons. They have also provided evidence demonstrating that other stockyards in the region have taken extra steps to cover the openings in their elevated walkways. *See* DE 121-2, 3. Accordingly, there is a genuine issue of genuine fact

9

as to whether Farmers Stockyards breached the duty of care it owed to the Plaintiffs, as invitees of its facility.  Summary judgment is inappropriate as to the common law negligence claim.

Accordingly, **IT IS ORDERED:**

That Defendants' motions for summary judgment, [DE 109, 120] are **GRANTED IN PART** and **DENIED IN PART.**  Summary judgment for Defendants is granted with respect to Plaintiffs' claims of negligence per se.  Genuine issues of material fact exist with respect to Plaintiffs' claims of common law negligence.

This the 10th day of March, 2016.

Signed By:
*Joseph M. Hood*
Senior U.S. District Judge