UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

| | |
|---|---|
| ANTHONY WALES, SR. and TONYA WALES, Individually and as parents & guardians of an unmarried infant, Next Friend A.W., Jr., <br><br> Plaintiffs, <br><br> v. <br><br><br> FARMERS STOCKYARDS, INC., <br><br> Defendants. | Action No. <br> 5:14-cv-394-JMH <br><br> **MEMORANDUM OPINION AND ORDER** |

\*\*\*   \*\*\*   \*\*\*

This matter is before the court upon Auto-Owners Insurance Company's motion for summary judgment, [DE 86]. The motion has been fully briefed and Abner Construction Company filed a belated cross-motion for summary judgment at docket entry 139.[1] The Court, having fully considered the matter, will grant summary judgment in favor of Auto-Owners Insurance Company.

**I.**

Plaintiffs claim that A.W., Jr., was injured in October 2013, when he fell from an elevated walkway located at Farmers Stockyards

---

[1] Abner Construction Company filed its response to Auto Owners Insurance Company's motion for summary judgment on March 9, 2016—well within the time provided by the Joint Local Rules of Civil Practice and this court's scheduling orders. That same day, however, Abner filed a motion for summary judgment, well beyond the February 1, 2016 deadline for filing dispositive motions. Because the motion was untimely and Abner was not granted leave to file the untimely motion, the Court declines to consider any new arguments raised in the motion.

in Flemingsburg, Kentucky. Plaintiffs subsequently brought a negligence suit against Farmers Stockyards who, in turn, filed a third-party complaint against Abner Construction for indemnification, alleging that A.W., Jr.'s harm, if any, was caused by Abner's negligence in its construction of the walkway. On November 17, 2015, Plaintiffs filed an amended complaint, adding negligence claims against Abner Construction. At the time of A.W., Jr.'s alleged injuries, Abner Construction was covered by Auto-Owners Insurance Company policy 114614-52942312-13. Auto-Owners and Abner dispute whether the policy covers the claims in connection with A.W., Jr.'s injuries.

Tod and Kelly Barhorst owned Abner Construction, which ceased construction activity in 2009.[2] Although Abner was not conducting its usual business and had no employees, it still owned equipment, which it stored at 150 Old Cranston Road in Morehead, Kentucky. In September 2011, Tod Barhorst went to the Jack Roe Insurance Agency in Morehead, Kentucky, seeking new insurance for Abner Construction and his other business, Barhorst, LLC, a rental and storage facility located at 150 Old Cranston Road. During his deposition, Barhorst reported that he was attempting to insure "the equipment, the storage facility, the rental, the warehouse, the property." He stated that he never had a conversation with

---

[2] According to the Kentucky Secretary of State's website, Abner Construction was administratively dissolved on September 28, 2013.

anyone at the insurance agency about discontinued business operations coverage. When asked why he thought Abner Construction would have past operations coverage when he never asked for it, Barhorst explained that it was common in the industry and he simply "thought we were covered."

As it turns out, Abner Construction was covered, for a while. Although Barhorst did not request discontinued business operations coverage, Roe sold him an Auto-Owners policy that provided comprehensive general liability coverage, which the company concedes would have covered the claims at issue. Barhorst admits that he was not aware of Abner's precise coverage at the time, however, as he never read any of the policies prior to this lawsuit.

In 2011 and 2012, the policies were renewed with the same comprehensive general liability coverage. Prior to the renewal of the policy for the 2013-14 term, however, Claudia Claussen, a Senior Underwriter at Auto-Owners, reviewed Abner Construction's policy. She noted that that the only classifications on the policy were buildings and, most importantly, there were no construction classes on the policy. She telephoned Jack Roe who informed her that Abner was no longer performing construction. Claussen unilaterally made the decision to "correct" the policy by adding a clarifying endorsement, which limited the coverage to events occurring on the property at 150 Old Cranston Road. The renewal

policy was issued on July 18, 2013, and did not become effective until September 8, 2013. Barhorst testified that he received a copy of the renewal policy in August, allowing him to review it prior to its effective date in September. Both Roe and Barhorst stated in their depositions that they had failed to read the renewal policy, which included the following provision on page seven out of 103:

**LIMITATION OF COVERAGE TO DESIGNATED PREMISES OR PROJECT**

> This endorsement modifies insurance provided under the following:
>
> COMMERCIAL GENERAL LIABILITY COVERAGE PART.
>
> SCHEDULE
>
> **Premises: 150 OLD CRANSTON RD
> MOREHEAD  KY    40351**
>
> **Project:**
>
> (If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)
>
> This insurance applies only to "bodily injury," "property damage," "personal injury," "advertising injury" and medical expenses arising out of:
> 1.   The ownership, maintenance or use of the premises shown in the Schedule and operations necessary or incidental to those premises; or
> 2.   The project shown in the Schedule.

The top of the page reads: "**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**" Presumably, after receiving the policy

4

in August, Barhorst made a payment toward the premium and the policy went in effect on September 8, 2013.[3]

## II.

Under Rule Federal Rule of Civil Procedure 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In deciding a motion for summary judgment, the factual evidence and all reasonable inferences must be construed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Summers v. Leis,* 368 F.3d 881, 885 (6th Cir. 2004).

The judge's function on a summary judgment motion is not to weigh the evidence, but to decide whether there are genuine issues of material fact for trial. *Anderson,* 477 U.S. at 249; *Multimedia 2000, Inc. v. Attard*, 374 F.3d 377, 380 (6th Cir. 2004). A material fact is one that may affect the outcome of the issue at trial, as determined by substantive law. *Anderson*, 477 U.S. at 242. A genuine dispute exists on a material fact, and thus summary judgment is improper, if the evidence shows "that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248; *Summers*, 368 F.3d at 885.

---

[3] Barhorst testified in his deposition that he paid his premium in installments.

**III.**

Generally, "the construction and legal effect of an insurance contract is a matter of law for the court." *Bituminous Cas. Corp. v. Kenway Contracting, Inc.*, 240 S.W.3d 633, 638 (Ky. 2007). Where the words of an insurance policy are not ambiguous, as in any contract, the plain meanings of the words chosen by the drafter are to be followed. *Id.* (citing *James Graham Brown Found., Inc. v. St. Paul Fire & Marine Ins. Co.*, 814 S.W.2d 273, 279 (Ky. 1991)). As the facts recited above indicate, under the plain language of the 2013-14 renewal policy, Abner Construction is not covered under the terms of the policy.

Abner contends that coverage for Plaintiffs' claims exist because Jack Roe improperly modified the application for coverage. The initial 2011 application provided that Abner Construction was in the "construction" business, but that was crossed out at some point and "Rental of Storage Fac." was written in its place. Roe also indicated that there had been no discontinued operations within the past five years, apparently without consulting Barhorst. During his deposition, Tod Barhorst testified that he might have signed the application with these modifications in place. Further, he testified that listing the business as "construction" would have been an incorrect statement on the application. It is undisputed that Abner and Roe were the only individuals involved in application process. Since Barhorst and

Roe do not recall the particular circumstances surrounding Roe's modifications and whether Barhorst had the opportunity to review them before signing, no reasonable jury could conclude that Roe impermissibly modified the application.

Abner also claims that it is entitled to coverage because Auto-Owners made a substantive change to the 2013-14 renewal policy without providing notice. During her deposition, Claudia Claussen reported that Auto-Owners' standard practice is to mail renewal policies to the local insurance agency so that the local agency may provide the policy to the insured. Tod Barhorst concedes that he received a copy of the renewal policy sometime in August 2013— prior to its effective date in September. In *Marcum v. Rice*, 987 S.W.2d 789, 791–92 (Ky. 1999), the Kentucky Supreme Court made clear that, "where the language of an insurance contract unambiguously explains the terms and conditions, no separate formal notification is required to effectuate a policy provision." The limiting endorsement at issue is clear and concise. Insurance policies are often lengthy, but it is notable that the endorsement is located on page seven. Additionally, bold letters at the top of the page alert the insured to read carefully, as the policy is being changed. This constitutes sufficient notice under Kentucky law.

Finally, Abner contends that its coverage under the 2013-14 renewal policy was illusory since, by that time, its only insurable

7

interest was its past operations.  Abner reports that, over the years, it had been selling its equipment and by 2013, "most, if not all" of the equipment had been sold.  Tod Barhorst was clear in his deposition, however, that when he purchased the insurance policy, he sought coverage for Abner's equipment.  Any remaining equipment that Abner possessed was covered by the policy, so the coverage was not illusory.  And while Abner complains about the premium increase for the 2013-14 renewal, one can speculate as to what the increase might have been had the general liability coverage been retained.  Ultimately, Mr. Barhorst received a copy of the 2013-14 renewal policy and could have chosen to purchase other coverage elsewhere, but he did not.  These are not grounds for the court to contravene basic principles of contract law and rewrite an insurance policy.

Accordingly, **IT IS ORDERED:**

(1)  that Auto-Owners Insurance Company's motion for summary judgment, [DE 86], is **GRANTED;** and

(2)  that Abner Construction Company's cross-motion for summary judgment, [DE 139], is **DENIED.**

This the 25th day of March, 2016.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge